Reese, J.
delivered the opinion of the court.
This is a contest between the complainant, who as administrator of his wife, and by virtue of his marital right, seeks to recover certain negroes, the separate property of his wife, from the defendant, Martin Laird, the trustee of the wife, and from one of her next of kin, who have the negroes in possession; the other defendants are also her next of kin.
1st. It can scarcely now be made a question whether the husband, having administered upon the wife’s estate, is entitled to retain the separate properly and choses in action of the wife after payment of the debts, without distribution among her nextof kin. He is not accurately described, when called as is sometimes done, her next of kin, nor does he derive his title to claim her personal pioperty from the statute of distributions, but he claims it, and is entitled ashusband, and in right of the marriage as owner. An ingenious elementary writer, Mr. Reeves, in his Domestic Relations, p. 11 to 17, makes an argument to prove that the husband having been unprovi- *223 tied for in the statute of distributions, 22 Ch. II. right to the exclusive enjoyment and ownership of his wife’s separate property and dioses in action, is founded upon the 29 Ch. II. c3,§ 35, and that therefore in all those States of our union, where this section of the latter statute has not been reenacted, the. husband, if he administer, is bound to distribute the surplus to the next of kin of the wife. As neither North Carolina before our separation from her, nor Tennessee since, have re-enacted that section, the point was raised a fewyears since in the chancery court at Franklin, in the case of Maury and Wife vs. Eaton, Lewis and others, and in the chancery court at Charlotte, in the case of Joslin, vs. Thompson. In the former case, the point was discussed by counsel with much force and ability, and the chancellor determined the question against the claim of the next of kin, and against the argument in Reeves’ Domestic Relations. As the decision in each of those cases, was acquiesced in by the parties and by the profession, and that'the question may not again be raised and discussed, we deem it not improper to say that we think the point was correctly determined in those cases. The husband, there fore, in this case, would be entitled upon his general right to recover the possession of the property in controversy, unless that right be destroyed by something existing in the cause. C 10, his
2d. The negroes in dispute were during the coverture, purchased by the separate funds of the wife, and by her direction conveyed to Martin Laird, the defendant, and to his heirs &c., “upon condition that he is to suffer and permit Sarah Hamrico, wife of John Hamrico, to keep possession of, and enjoy to her own seperate use and benefit the said negro woman and her increase, free from the control or disposal of her said husband, or any other person, and if the said Sarah should at any time hereafter desire to sell or otherwise dispose of said negro or her increase, the said trustee is hereby bound to convey and dispose of said negro or her increase, according to the wish and instructions of the said Sarah, and should the said Sarah wish, she is hereby authorised to dispose of said negro and increase by will, and the same shall go according to her said will after her death, and should she die intestate, then *224 (he sa¡d negro and her increase shall go to her children if she . ° any, and if not, then to her brothers and sisters.”
The wife took the property into her possession and retained it till her death. She directed no sale, made no will, and died without issue. The defendants are her brothers and sisters. Can they claim the property by virtue of the above instrument? Founding their title upon that abne, it is most clear they cannot. The entire property was hers and at her absolute disposal, without control or limitation. No estate whatever vested in the defendants by operation of this deed. It were useless to cite authorities to maintain a proposition so obvious.
3d. But there was in consideration of marriage, an ante nuptial contract between the husband and wife, both being of full age. That contract is as follows: “Whereas, a marriage is about to take place between John Hamrico, of the county of Giles and State of Tennessee, and Sarah'Tuttle, of the said county of Giles and State aforesaid, the said John Hamrico being widower, and having several children living with him that he had by his first wife, and as Sarah Tuttle is a single woman without children, it appears right that a part of the money and debts due'her should and ought to remain hers, and under her control after marriage, the same as at this time; for remedy whereof, the said John Hamrico for himself, his heirs, &c., agrees with the said Sarah Tuttle, that the said Sarah shall and may set apart and keep for her own use, and to be at her own disposal, four hundred and fifty dollars, out of any money she may have on hand at this time, or in debts owing to her, to be applied by herself or any other person she may authorise to lay the same out to purchase a negro woman and child, or said money, she may lay out in any other way it may suit her best; and in 'order[that it may more fully appear that the money, or property ^purchased by the same fisJo remain hers, the said John Hamrico; agrees and binds himself,^ his heirs, &c., to relinquish all clainThe has or ever__could have^to the property orjnoney so purchased, either in law or equity, that he might acquire by marrying and becoming the husband of Rie said Sarah Tuttle, and that she, the said Sarah, shall have '"he sole disposal and management of the same, with as much teas'! *225 right, power and authority as if a marriage had never taken place between the parties,or as if the said Sarah had never come the said John’s wife. In witness whereof we have hereunto set our hands and seals, this 8th day of May, 1830.
JOHN HAMRICO, [Seal.]
SARAH TUTTLE,[Seal.]
Attest, Robert M. Bugg, Martin Laird.”
The rights of the parties in this controversy, and the result of the cause must, depend upon the construction of the above contract, as to whether it is to be held a release of the marital right of John Hamrico during the coverture only, or absolutely. That the interest of the husband by survivorship may be released will hardly be controverted. In equity a possibility may be both released and assigned. 1 P. Wm. 574: 2 Atk. 421: 5 Ves. 583:3 P. Wm. 132: 2 Atk. 208: 1 Ves. 411. In the case of Ladbrook and Tompkins, 2 Ves. 592, it is decided, where the wife of a freeman (of the city of London,) is compounded with, her third accrues to the whole estate¿ and she is considered as dead. And in Read vs. Hall, 2 Atk. 644, where the wife has compounded with her husband, he is to be regarded as leaving no wife.
The language of the covenant before us is very strong. Does it look only to the coverture? There is no expression limiting it to that period. The terms during coverture or dur-irg the life of the wife, no where appear in it. The phrase in the recital, “that she is to hold the property after marriage as before,” is not equivalent to the phrase “during coverture,” it is much stronger against the husband. The recital in the commencement of the instrument, that “she is without children,” and the husband has “several by a former marriage,” and that therefore it seems right that a part of the property should remain hers, seems to look beyond his life, to a provision for her children, as against the husband and his children by the former marriage. And, as if to remove all doubt on the subject of his at any time putting forward a claim to the' property in question, on the ground of his marital right, -present, prospective or contingent, he explicitly declares, in order that it may more fully appear that the money or properly purchased by the same, is to remain hers, the said “John Ham- *226 r;c0 agrees nnd binds himself, his heirs, &c. to relinquish, and relinquish, all claim he has or ever could have to the met-' noy or property so purchased, either in law or equity, that he might acquire by marrying and becoming the husband of tbs said Sarah Tuttle.” Language more strongly appropiiato to exclude him from all title whatever to the properly, by virtue of his marital right, not only during the coverture, hut absolutely and for ever, could not we think have been adopted; and we are uuabli t > perceive any thing in the balance of the instrument to limit this language to the period of coverture.
Tlit; post nuptial conveyance to the trustee of the wife, who was one of the witnesses to the contract, has much force in the view we are taking of this part of the case. We have said it lias no legal efficacyp r se in passing the title to the defendants. It is perhaps not a good appointment nnd ;r the contract, hut it was prepared at the instance of the wife, submitted to her inspection, and approved by her. The whole transaction in short, the conduct of the husband, and his declaration on the subject, are strong and pregnant circumstances to show in what sense the husband and Wife, and the relations of the wife understood the instrument to which we have been attempting to give a construction, and they powerfully fortify that construction.
The case of Stewart vs. Stewart, 7 J. Ch. Rep. 248, has a good deal of analogy to .li's case, and the authority of it had well nigh operated on our minds to give to this case a different result from that above indicated.
In that case, the chancellor states, (p. 248,) £:that the husband covenanted lint lfs wife during coverture, should have to her own use all the personal properly belonging to her at herma riage, or which migh come to her during coverture, by devise or otherwise, and that she might convey away the same according to the forms óf law, by testament or otherwise; and that during coverture she should enjoy the right of dower in the estate of her former husband, and the rents and profits of any real estate to which she might he entitled, as fully as ifslte had remained sole, he thereby releasing all his marital rights In and over the same, and covenanting to make other assurances, &c.” The chancellor says that the words at the latter *227 end of the covenant, releasing all his marital rights in and over the same, refer to (he immediate antecedent provision to the rents and profits of her real' estate, according to, the maxim, idem semper antecedenli proximo refertur. And if the release was to be construed to apply to every part of the covenant, it could have no greater operation and effect than the provisions in the covenant, and ought to be construed to be only a release of his marital rights during the coverture.” This extract from the covenant and the commentary of the chancellor thereon, show the difference between that, case and the one before the court. Indeed that case proves that if his marital rights had been clearly and absolutely released, effect would have been given to it, although the children as next of kin were not mentioned in the release or the covenant. Our conclusion therefore, in this case is, that by the ante nuptial covenant the husband did absolutely and entirely release his marital rights, and therefore that the next of kin of the wife, the defendants, arc entitled to the property in controversy.
But finally, it has been urged for the complainant, that let the right be as it may, he has administered upon the estate of the wife, and in his character of administrator is entitled to recover these negroes as assets for the payment of debts; and for this ws are referred to the case of McKay vs. Allen and others, 6 Yer. Rep. 44, In that case debts against the separate estate of the wife were alleged and proved. Here they are neither alleged nor proved. Here also, tnree years have elapsed since administration granted, and the administration should have closed, and the distributees would be entitled if the negroes were surrendered, to have them immediately returned to them.
In truth the complainant, although he states himself as the administrator, yet he sues upon his title as husband and owner of the property. The existence of a debt is not intimated, and the marriage contract itself and the other proof in the cause, make the existence of any debt highly improbable. Let the decree of the chancellor be affirmed.
Decree affirmed.